tracts for the payment of a commission for the sale of real estate to be in writing, and the plaintiff may state a cause of action by alleging that the contract in question was an oral one.

After the first amendment, above quoted, became effective, it was held that similar contracts where the agreement to pay a commission for the sale of land was made before the amendment became effective, and the sale consummated after this amendment became effective, the statute as amended, applied, and real estate agents under such circumstances could not recover. *Brenner et al.* v. *Spiegel,* 116 O. S., 631; *Burnstine* v. *Resler,* 29 O. App., 253; *Hornback et al.* v. *Sabin Robbins Paper Company,* 27 O. App., 329; *Cramer, Inc.,* v. *Patterson,* 25 O. App., 130.

The demurrer will be overruled.

Common Pleas Court of Hamilton County.

MEYERS V. STATE OF OHIO.

Decided December 31, 1931.

*D. R. Tate,* for plaintiff in error.

*Wm. H. Burtner* and *Raymond J. Kunkel,* for defendant in error.

DARBY, J.

The plaintiff in error was convicted by a justice of the

peace on an affidavit charging the violation of General Code Section 1408, in that he unlawfully pursued and killed a barn owl known as a "monkey face owl."

It was conclusively shown on the trial that such an owl was killed, and by the confession of the plaintiff in error it was established with certainty that he killed the owl. Thus there was ample evidence to show the *corpus delicti* and the commission of the offense by the plaintiff in error.

On the trial the plaintiff in error testified in his own behalf that he saw the bird, and shot it, but he says at the time he did not know that it was an owl. His testimony was that the owl was killed on the premises of his sister, where he was stopping at the time caring for her chickens. He testified that she had lost at least a hundred chickens by the depradations of some bird. In his testimony plaintiff in error stated that—

"It was on the 20th day of July, on a Monday. I was to take care of her chickens while she was away. I went to feed them. We had been watching to catch this thief who was killing her chickens. I saw the bird and shot it."

There was corroborative evidence that many of the chickens referred to had been killed, and birds were seen to fly over the place scaring the chickens. One witness testified that he had seen the birds menacing the chickens, and that he had seen them dart down into the fields or yards where the chickens were, but on account of weeds there, he had never actually seen the killing.

In its decision the Court among other things said:

"The defendant was informed that about one hundred chickens were killed, and said defendant was of the opinion that the bird in question was killing the chickens, although he never saw any bird killing said chickens."

It is shown that the bird in question was produced by some one connected with defendant's home, and at the time, to use the language of the witness, the bird had been dismembered and was ruined, so there is nothing to show that the intention was to keep the bird, but to destroy it for some other purpose.

If the plaintiff in error in good faith believed that the bird in question was killing the chickens which were in his charge, was he justified in killing the bird?

The statute does not contain any such exception from its operation, but makes it an offense to pursue and kill such bird except for scientific purposes as provided in Section 1409 of the General Code.

Here is a conflict between the right of private property and protection of this bird among others.

Under the Constitution of Ohio, among the inalienable rights specified in that of "acquiring, possessing and protecting property * * *." (Article I, Section 1) Also (Article I, Section 19) : "Private property shall ever be held inviolate, but subservient to the public welfare." With these Constitutional rights, may the Legislature arbitrarily forbid the killing of a bird which it is shown is destroying the property of a person?

Which is more important, that the birds shall be protected, or that private property shall be protected? Must the owner of poultry stand by and see predatory birds kill or carry away his property and be helpless to protect the property?

The plaintiff in error showed by very clear evidence that this loss had occurred, and that at the time he killed the bird he was on the lookout for the offending bird, and that this was the bird he shot under those circumstances. It seems a thoroughly good defense, proven by the preponderance of evidence upon the subject, and the plaintiff in error should have been acquitted.

The finding of this Court in this case has support in *Taylor* v. *Newman*, 4 Best & Smith Reports, 89, where a similar situation to the one at bar was presented, with the exception that the bird killed in that case was privately owned and the owner had been warned of its depredations. The syllabus is as follows:

"By Statutes 24 and 25 Vict. c. 96, s. 23: 'Whoever shall unlawfully and wilfully kill, wound or take any house dove or pigeon under such circumstances as shall not amount to larceny at common law shall forfeit, over and above the value of the bird, a sum not exceeding 2L.' House pigeons kept by A were in the habit in the

daytime, of flying over and upon and feeding upon the ground of B. He served notice on A, requesting that he would immediately cause them to be destroyed or prevent them from doing further injury to appellant's crops; if not, he would be compelled in self defense to shoot or otherwise destroy them, besides claiming damages for the injury he sustained from their feeding on his land. After this B found them feeding on his land, and fired at them and thereby caused them to rise. He then fired at them a second time and killed one, which he left on the ground. *Held,* that he had not *unlawfully* killed it within the meaning of the section."

Under the prohibition law, Section 6212-16, General Code, it is made an offense to have or possess any liquor. Nothing is said in the law about having it knowingly, and nothing is said about good faith being a defense. Under a strict interpretation of the law, the offense is complete when possession is shown, but as the law has been interpreted, knowledge of possession is essential. One might have possession of intoxicating liquor, and not be cognizant of the fact, and a reasonable and sensible interpretation of the law is that one does not have unlawful possession of liquor by having possession of it without knowledge. While stricter rules are applied in some states, in Ohio the sensible rule is applied, that if it is not shown that one has possession of liquor knowingly, he may not be convicted.

In *Dosio* v. *State,* 26 O. L. R., 598, 34 O. App., 384, the prohibition law is interpreted as follows:

"Facts and circumstances showing defendant's knowledge of existence and location of intoxicating liquor in his possession warrant finding that he had control of it as required to authorize conviction of unlawful possession * * *."

Thus, evidence of good faith and absence of knowledge would not only justify but require an acquittal of a charge of having possession of intoxicating liquor.

The judgment of the justice of the peace is reversed, and the defendant discharged on the ground that on the defense established by him he was entitled to be acquitted.